John F. Scileppi, J.
Plaintiff sues for specific performance of a written contract, dated June 20, 1956, for the purchase of a strip of land approximately 20 feet wide and running across the southerly side of the block bounded by 205th and 206th Streets and 32nd Avenue, Bayside, Queens County, New York. This land abuts the property known as the Bayside G-olf Course. The property was originally described in the contract by block and lot numbers only.
The defendant vendor denies the material allegations of the complaint and as a separate affirmative defense pleads the Statute of Frauds.
The material facts are as follows: The preliminary negotiations had before the contract was prepared were between the defendant’s attorney, the plaintiff’s attorney and another representative of the plaintiff corporation. The plaintiff’s attorney is also vice-president of the plaintiff corporation. The defendant at no time was present during, the preliminary negotiations. The price agreed upon by those three was $3,750 and it was then further agreed that the defendant’s attorney prepare the contract of sale. This contract was then prepared by him and it was signed by the defendant.
Defendant’s attorney then forwarded to the plaintiff’s attorney three copies of the contract of sale, each executed by his client, together with a letter dated June 19, 1956 which requested him to hold the contracts in escrow pending the delivery of a check or cash in the sum of $500, together with two of the enclosed contracts duly executed by the plaintiff. The letter also authorized plaintiff’s attorney to fill in the name of the purchaser and made reference to the fact that although the contract acknowledged receipt of the sum of $500 as the deposit due thereunder, it had not been received. It further requested plaintiff’s attorney to insert the closing date in the proper place. This letter is plaintiff’s Exhibit 4 in evidence.
When the plaintiff’s attorney received the contracts, he telephoned defendant’s attorney and advised him that he wished to include other provisions and to make certain changes in the contract. Defendant’s attorney admits discussing the matter with him and admits authorizing him to make the proposed changes which were actually made by plaintiff’s attorney. He testified, however, that he told plaintiff’s attorney that he “ thought ” it was all right to insert the provisions and to make the changes, but that ho would have to get the approval of his client. Plaintiff’s attorney disputes this and asserts that he was advised by him that he was authorized by defend *966 ant’s attorney to make these changes after he had been informed that the defendant had agreed upon those changes.
The provisions added by plaintiff’s attorney were (1) that the northerly line of the premises contracted to be sold was contiguous to land known as the Bay side Golf Club, (2) that the date of closing be fixed as September 5, 1956 at 10:00 a.m. provided taxes be apportioned as of July 5, 1956 and (3) that the sale was conditioned upon the purchaser or his assignee acquiring title to the Bayside Golf Course, pursuant to a contract dated March 2,1956, and that if plaintiff could not acquire title to the Golf Course property, then the seller would return the moneys paid by purchaser, and upon such repayment the contract would be cancelled without any further liability of either party to the other (italics supplied). Further, that if the purchaser defaulted, the sole liability of the purchaser would be limited to the loss of the contract payment which the seller was to retain as liquidated damages and that the seller expressly waived the right to any and all claims for damages and/or the right of action for specific performance.
All of these provisions were added to the original contract by plaintiff’s attorney. Then he signed the same as vice-president of plaintiff corporation and returned two copies of the contract, together with a check for $500, to defendant’s attorney with letter of June 20, 1956, which letter specified that the changes and additions made were in accordance with a telephone conversation had between him and defendant’s attorney. The letter further specifically referred to the fact that the closing date was September 5, 1956 with adjustments as of July 5, 1956, pursuant to the same telephone conversation.
Plaintiff’s attorney heard nothing more from defendant’s attorney until June 27, 1956 when he received a letter dated June 26 in which defendant’s attorney advised plaintiff’s attorney that pursuant to instructions of his client, he enclosed check payable to Florence Band in the sum of $500, which represented the contract deposit, and further stating that his client refused to approve the changes and additions which were not included in the original draft of the contract. He further advised plaintiff’s attorney in that letter that he regretted that his client compelled him to return the deposit and that she had ordered him to cancel and nullify the contract of sale. The letter also stated that upon exchange of general releases, he would be pleased to deliver to plaintiff’s attorney the contract of sale which he had in his possession. The letter of June 26 was marked plaintiff’s Exhibit 8 in evidence.
*967 On June 28, 1956 plaintiff’s attorney wrote defendant’s attorney a letter, marked plaintiff’s Exhibit 9, in which he reviewed the negotiations had between them and stating that his client considered that he had a contract in full force and effect with the defendant, that prior thereto it had ordered a title examination on the property, and that if the examination disclosed that .a good marketable title could be conveyed in accordance with, the terms of the contract, he would appear at defendant’s attorney’s office at the closing date prepared to close title. He further advised defendant’s attorney that if his client refused to close title, he would institute action against her to recover judgment directing her to specifically perform the contract and to recover from her all losses and damages including counsel fees that the plaintiff might sustain by reason of defendant’s default. With that letter, plaintiff’s attorney returned the $500 check representing the deposit called for in the contract which had originally been forwarded to defendant’s attorney on June 20, 1956, and specifically advised that his client could not accede to defendant’s request that the contract be cancelled and nullified.
On July 10, 1956, defendant’s attorney, by letter, returned the $500 check to plaintiff’s attorney, stating that that was done at the request of his client (plaintiff’s Exhibit 10 in evidence). On July 17, plaintiff’s attorney acknowledged the receipt of the check by letter, but stated that he regarded the contract in full force and effect and that he would be ready to take title on the day and time set forth in the contract, at defendant’s attorney’s office, to wit, September 5, 1956 at 10:00 a.m. This letter likewise informed defendant’s attorney that at the time of closing, the $500 check would be ready for delivery, together with additional sums due the defendant on the closing of title.
Thereafter, plaintiff’s attorney called at the office of the defendant’s attorney on September 5, 1956 at 10:00 a.m., and tendered the full amount due the defendant under the terms of the contract, but the defendant failed and refused to make delivery of the deed to the property.
At the trial, the defendant denied that she had ever agreed to the changes made in the contract by plaintiff’s attorney. She testified that she had never authorized her attorney to agree to such modifications. Her attorney likewise testified that while he authorized plaintiff’s attorney to insert the new provisions in the contract, he specifically advised plaintiff’s attorney that he would have to get the approval of his client, but thought that he could do so. Without deciding which of these two versions is correct, the court will first consider *968 whether the Statute of Frauds is a complete defense to the plaintiff’s cause of action.
Under section 259 of the Real Property Law, all contracts for the sale of real property must be in writing. The defendant agreed to be bound to the contract as drawn by her attorney, but when plaintiff’s attorney inserted the clauses which made the contract conditional upon the plaintiff’s acquiring title to the Golf Course property, this was a material change in its terms which deprived the defendant of the substantial right to have an unconditional contract in the terms which were specified before the plaintiff inserted the new clauses. What the plantiff’s attorney did in effect was to make the defendant a counteroffer, which the defendant had a right to reject.
The fact that thereafter plaintiff actually acquired title to the Golf Course property and that it is now willing to waive that condition, is of no consequence and it may not demand specific performances at this time. The situation must be considered and the rights of the parties must be determined as of the time when the original contract was offered. So far as the provisions which made the contract a conditional one are concerned, the court finds that there was never any meeting of the minds with respect to that and, therefore, no contract at all.
The court concludes that the defendant has a complete defense to the plaintiff’s complaint under section 259 of the Real Property Law. This being so, it is unnecessary to decide whether oral authority was given by defendant to her attorney concerning the plaintiff’s attorney’s right to make the changes and modifications in the contract. There is no contention here that defendant’s attorney had written authority from the defendant to make the changes that were made. Neither did the defendant agree to them in writing, nor did she initial the contract after they were made.
Accordingly, the court finds judgment in favor of the defendant dismissing the plaintiff’s complaint on the merits.
This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.